The STATE of Ohio, Appellee,

v.

KELLY, Appellant.

[Cite as *State v. Kelly* (1994), 93 Ohio App.3d 257.]

Court of Appeals of Ohio,
Stark County.

No. CA9284.

Decided Feb. 22, 1994.

260

*Kristine W. Rohrer,* Stark County Prosecuting Attorney, for appellee.

*Bradley R. Iams,* for appellant.

FARMER, Judge.

Appellant, Danny Kelly, and Michelle Kelly are the natural parents of Angel (age four) and Amy (age six). In February 1991, Ms. Kelly took the children and left home. Thereafter, the girls began to behave inappropriately; specifically, there were concerns regarding sexual acting out. As a result of the girls' behavior, Ms. Kelly arranged for them to enter counseling. Based on the disclosures made by Angel and Amy, appellant was indicted by the Stark County Grand Jury on December 4, 1992, and charged with two counts of rape in violation of R.C. 2907.02, two counts of sexual battery in violation of R.C. 2907.03, two counts of gross sexual imposition in violation of R.C. 2907.05 and two counts of endangering children in violation of R.C. 2919.22.

Appellant was arraigned on December 11, 1992, and entered pleas of not guilty to all charges. A jury trial was commenced on February 24, 1993. Among the witnesses called by appellee, the state of Ohio, were the alleged victims. Prior to their testimony, the court questioned each child to determine her competency to testify. Over appellant's objection, the court found each child to be a competent witness.

At the close of the evidence, the trial court dismissed the two counts of endangering children. The jury returned a verdict of guilty to all remaining counts in the indictment. The trial court sentenced appellant to life imprisonment on each count of rape, to be served consecutive to each other, a definite term of two years on each count of sexual battery, merged with the counts of rape, and a definite term of two years on each count of gross sexual imposition, to run consecutive to each other and to the life sentences.

Appellant timely filed a notice of appeal and this matter is now before this court for consideration.

Assignments of Error are as follows:

"Assignment of Error No. 1:

"The trial court erred in not conducting an adequate competency hearing and in finding Amy and Angel Kelly competent to testify.

"Assignment of Error No. 2:

"The trial court erred in admitting accusatory hearsay evidence as an Evidence Rule 803(4) exception without first conducting the analysis required by *State v. Dever.*

"Assignment of Error No. 3:

"The trial court erred in permitting the children's counselor to testify regarding inadmissible accusatory hearsay statements made to her by the children.

"Assignment of Error No. 4:

"The trial court erred in permitting 'experts' to testify as to their opinions regarding the existence of sexual abuse.

"Assignment of Error No. 5:

"Appellant was denied a fair trial and due process of the law by the misconduct of the prosecuting attorney.

"A) By providing the jury with her own personal opinions as to appellant's guilt, the prosecuting attorney improperly placed her own credibility and status as a prosecutor into evidence.

"B) The prosecuting attorney repeatedly asked improper questions and persisted until she got the answer she wanted to obtain before the jury.

"C) The prosecuting attorney misrepresented the testimony during closing argument.

"Assignment of Error No. 6:

"The evidence was insufficient to support a finding that either victim was compelled to submit to rape by force or threat of force.

"Assignment of Error No. 7:

"The trial court erred in refusing to dismiss Juror Number 27 for cause after the juror admitted that she knew both of the victims."

I

Appellant claims that the trial court erred in failing to conduct an adequate voir dire examination of the minor witnesses, ages six and four, as to their competency to testify. We disagree.

Under Evid.R. 601(A), a child under ten years is not competent to testify if the child "appear[s] incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." This determination must be made by the trial court through a voir dire examination.

Justice Resnick has set out certain factors that the trial court must consider in reviewing the competency to testify of a child under ten:

"In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus.

In the case *sub judice*, the trial court conducted an examination of Amy Kelly, age six, and Angel Kelly, age four, in open court with counsel for appellant present. Appellant had been excluded from the courtroom at appellee's request under the authority of *Kentucky v. Stincer* (1987), 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631. These examinations are included in the transcript at Vol. I, at 89–98. The trial court personally conducted the examination of the girls.

Both girls explained to the court the ramifications of telling a lie and the punishment for lying, thereby satisfying the requirements of numbers four and five enumerated in *Frazier*. The girls responded to the trial court's inquiry

about where they lived, what type of home they lived in, who lived with them now, the type of grade or class they were in (Amy corrected the court that kindergarten was not a grade), and who their teachers were, thereby satisfying numbers one through three of *Frazier.* At the conclusion of these voir dires, the trial court found the children competent to testify.

Absent a showing of an abuse of discretion, appellate courts will not reverse a finding of competency entered by a trial court that has had the ability to personally observe and question the child. *State v. Lewis* (1982), 4 Ohio App.3d 275, 4 OBR 494, 448 N.E.2d 487. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

From our review of the record, we find no indication of an abuse of discretion by the trial court in conducting the voir dire examination nor in the decision of competency.

Assignment of Error I is denied.

## II

█ Appellant claims that the trial court erred in admitting as evidence statements given by the victims to a physician and a social worker without a voir dire hearing on admissibility. We disagree.

Appellant cites to this court the dicta in Justice Resnick's opinion on *State v. Dever* (1992), 64 Ohio St.3d, 401, 410, 596 N.E.2d 436, 444:

"The trial court should consider the circumstances surrounding the making of the hearsay statement. If the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment. This inquiry will vary, depending on the facts of each case."

Admittedly, this suggested voir dire procedure was not done in the case *sub judice.* The trial court, under Evid.R. 104(A), is the sole determinant of the admissibility of evidence:

"RULE 104. PRELIMINARY QUESTIONS

"(A) Questions of Admissibility Generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges."

█ This obligation to determine admissibility refers to statements which are sought to be admitted under Evid.R. 803(4) as in the case *sub judice.* The issue to be determined under Evid.R. 104(A) is the admissibility of these statements by the victims to the physician, Leslie A. Mitchell, M.D., and the social worker, Elizabeth Mostatter. Appellant as much as concedes that the taking of the medical history by the social worker is the same as if it was given to the physician in the case *sub judice.*

We are required to examine the testimony to see if the trial court erred in finding that the evidence qualified as an exception to hearsay under Evid.R. 803(4). At the end of the testimony, the trial court specifically found that it met the exception. One wonders what the trial court would have done had it found that the testimony would not qualify under Evid.R. 803(4). This sort of dilemma would have been resolved had the trial court followed the dicta in *Dever.*

Upon examination of the testimony under the guidelines of *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, and *Dever,* we find that the social worker who did the initial history did it for the purposes of diagnosis and treatment. During the history to Mostatter, Amy stated that her father had touched her and hit her. Dr. Mitchell did a physical examination of the children and it was during that physical that Angel responded to Dr. Mitchell's inquiry as to touching. Angel told Dr. Mitchell that her "daddy" had done the touching. All of this testimony was given after the victims had testified, and except for the claim that Amy had been hit by her father, the testimony was consistent with their prior testimony.

The motivational factors that were of great concern in *Boston* and the trustworthiness issue raised by *Boston* and *Dever* were in fact addressed in the case *sub judice* because the victims testified prior to Dr. Mitchell and Mostatter, and were subject to cross-examination and confrontation. This case is clearly distinguishable from the *Boston* and *Dever* cases were there was no prior cross-examination of the victims. Clearly, the right of confrontation was not violated by the trial court's technical error in not conducting a *Dever* voir dire.

Assignment of Error II is denied.

### III

█ Appellant claims that statements made to a counselor do not qualify under the hearsay exception in Evid.R. 803(4). We disagree.

█ Appellant argues that the treatment of the victims by Lori Brisbin, Ph.D., a psychologist, does not qualify as a medical treatment exception under Evid.R. 803(4). To resolve this issue, we look to the dicta in *Boston.* In *Boston,* 46 Ohio St.3d at 129, 545 N.E.2d at 1240–1241, the court concluded that treatment by a

psychologist did qualify as medical treatment under Evid.R. 803(4). Clearly, with that dicta, the Supreme Court has sanctioned using Evid.R. 803(4) when treatment is being given by a psychologist. As is suggested in *Boston*, the better course to follow when a child victim testifies is under Evid.R. 801(D)(1)(c):

"RULE 801. DEFINITIONS

" * * *

"(D) Statements Which Are Not Hearsay. A statement is not hearsay if:

"(1) *Prior Statement by Witness.* The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * *

"(c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."

We concur that although the trustworthiness standards were not met, the statements made to Dr. Brisbin qualified under Evid.R. 801(D)(1)(c).

Assignment of Error III is denied.

## IV

Appellant claims that the trial court erred in permitting "experts" to testify as to their opinions regarding the existence of sexual abuse. We disagree.

Evid.R. 702 permits opinions of experts if the testimony offered will provide information to the fact finder, *i.e.*, jury, which is "sufficiently beyond common experience." *State v. Buell* (1986), 22 Ohio St.3d 124, 131, 22 OBR 203, 209, 489 N.E.2d 795, 803. As Justice Douglas concluded in *Boston*, experts may be in fields beyond law and medicine, including experts trained in child sexual abuse cases. Further, Evid.R. 703 defines the basis for the opinion:

"RULE 703. BASES OF OPINION TESTIMONY BY EXPERTS

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

In order to review this assignment of error, we must examine the testimony of Dr. Mitchell and Dr. Brisbin. Dr. Mitchell opined that Angel had been sexually abused. Dr. Mitchell formed her opinion after obtaining the history from Angel, examining her and hearing Angel's own statements, which were testified to at the trial by Angel (see Assignment of Error II). Dr. Mitchell's statement was based upon her knowledge and skill in the specialized unit at Akron Children's Hospital and on the facts. The physical examination of Angel and data presented to Dr. Mitchell fulfilled the requirement of Evid.R. 703.

■ Dr. Brisbin, the psychologist who treated the victims as part of the overall assessment treatment team, opined that Amy and Angel had been sexually abused. Dr. Brisbin testified that this opinion was based upon her personal observations of Amy's sexual acting out during the counseling sessions and Amy's own account of the attacks (see Assignment of Error III and testimony of child). Dr. Brisbin also testified that Angel acted out in a similar fashion to her sister, including bed wetting and masturbation, and Angel also gave her own account of the attacks (see Assignment of Error III and direct testimony of the witness). Further, Dr. Brisbin was qualified by appellee as a child abuse expert spending eighty-five percent of her professional time on child abuse cases.

Dr. Brisbin's testimony met the requirements of Evid.R. 703. We note that appellant takes issue with the fact that Dr. Brisbin was a psychologist and not an M.D. In *Boston*, one of the doctors whose expert testimony was permitted was also a psychologist.

Assignment of Error IV is denied.

V

Appellant claims that he was denied a fair trial and due process of law because of the prosecutor's misconduct. We disagree.

Appellant points to three separate types of misconduct. He first claims that the prosecutor offered her opinion of appellant's guilt to the jury. Second, appellant claims that the prosecutor repeatedly asked improper questions. Last, appellant claims that the prosecutor misrepresented the testimony during closing argument.

■ The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and, if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144. We have been continually reminded by reviewing courts that a trial is similar to an arena of combat where our adversarial system generates both tension and turmoil during trial, *State v. Stephens* (1970), 24 Ohio St.2d 76, 53 O.O.2d 182, 263 N.E.2d 773, and where trials cannot be "squeezed dry of all feeling." *State v. Keenan* (1993), 66 Ohio St.3d 402, 409, 613 N.E.2d 203, 208. It is conceded that the prosecutor may "strike hard blows, [but the prosecutor] is not at liberty to strike foul ones." *Berger v. United States* (1935), 295 U.S. 78, 88,

55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321. With these basic premises as controlling, we will address the three problem areas.

## OPINION OF PROSECUTOR

■ Appellant claims that during voir dire, the prosecutor qualified herself as an expert in trying child abuse cases. There was no objection made to that statement; therefore, we find that it was not preserved for appeal. However, this issue might call for an examination under the plain error doctrine if in fact the remarks were improper. These are the first remarks of appellee in voir dire and are parallel to an attorney introducing himself or herself as a defense attorney, personal injury attorney or Ohio Attorney General.

■ Appellant next argues that during the cross-examination of appellant, the prosecutor stated that appellant was not telling the truth:

"Q. Isn't it true that you have testified, under oath,

"THE COURT: No, no, don't ask what he testified. The Jury can recall what he testified. Just ask a question. Don't ask him to characterize what the testimony was.

"MRS. ROHRER: Well, Your Honor, he's not telling the truth."

Upon review of the transcript, we find that this dialogue between the court and the prosecutor was after appellant was repeatedly evasive to the prosecutor's questions and had in fact goaded the prosecutor and challenged her after that comment. The remark is clearly one of frustration and there was no objection to that comment in the record. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. The plain error rule is to be taken with utmost caution under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

Given the totality of the circumstances involved in the dialogue between appellant and the prosecutor, we find no error rising to the standard of plain error to justify a reversal.

### *Improper Questioning*

■ Appellant claims that during direct examination of the victims on the issue of force, the prosecutor repeated questions disallowed by the court to get her answers.

The complained-of areas are in the transcript at Vol. I, 114–115, 148, 149–150, and involved the questioning of both girls. While the court denied opinion testimony, the court permitted the non-opinion questions that appellant now

objects to in argument. Under this set of facts, we find no abuse of discretion by the trial court in overruling appellant's objections to the questions finally asked and answered.

*Closing Argument*

 Appellant claims that the prosecutor misrepresented the testimony during closing argument. In particular, appellant argues that the following statement was improper:

"But I asked her, did he make you do these things? And she said, 'Yes, he made me do these things'. And how did you feel? 'I felt scared and I felt sad'. Now that's force."

There is no objection to this statement in the record; therefore, this must be considered under the doctrine of plain error. *Long.* The prosecutor's statement was on the issue of how the attacks made Angel feel. There is no testimony in the record regarding how Angel felt. Clearly, the prosecutor's statement was a misstatement of the evidence. Given the fact that the trial court permitted jurors to take notes, and the obvious inadvertence of the statement, we find no prejudice to the level of the plain error standard.

Assignment of Error V is denied.

## VI

 Appellant claims that there was insufficient evidence of force to support a finding by the jury that the victims were compelled to submit by force or threat of force. We disagree.

 The trial court instructed the jury on the issue of force, and provided a place on the verdict form for a finding of force by the jury. Appellant first argues that within the jury instruction on force, the trial court did not provide a definition of the necessary burden to convict. We disagree. Within the charge is the definition of the proper burden, *i.e.*, beyond a reasonable doubt, and at the court's summation of the rape counts. We further note that appellant got the benefit of an incorrect charge on circumstantial evidence. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

The scope of our review is limited to the guidelines of *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239, which states:

"In reviewing a claim that a jury verdict was against the weight of the evidence, or that the evidence was insufficient, a reviewing court's duty is to

review the record to determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt."

We are further guided by the language of *Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d at 503, which states that in "reviewing both weight and sufficiency of the evidence, the same test is applied." Therefore, the reviewing court is to examine the evidence introduced at the trial "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. As the appellate court, we must view the evidence in a light most favorable to the prosecution and in support of the verdict, and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

Apart from the delineated sections of the transcript, we find other incidents of force in the record. Amy said that appellant would "hurt mom" if she told; Amy stated that Angel would be crying when in the bathroom with appellant; Angel testified that appellant made her do things; the mother stated that she would hear the children crying and screaming when she left appellant alone with the girls; and Amy told Mostatter during treatment at the care center that appellant had hit her.

Given the standard of review of *Brown* and *Jenks,* we find no error in the trial court's instruction on the issue of force.

Assignment of Error VI is denied.

## VII

Appellant claims that the trial court erred in refusing to dismiss Juror No. 27 for cause after the juror admitted knowing the victims. We disagree.

After the jury was sworn, opening statements made and the direct examination of Amy, Juror No. 27 requested to confer with the trial court. The juror recognized Amy as possibly being a child in one of her classes at church. This was confirmed as being true during a recess. The trial court then conducted an inquiry of the juror as to whether this would affect her ability to fairly decide the case:

"THE COURT: Okay. Do you think that it would have any effect upon your fairly deciding the issues in this case?

"JUROR NO. 27: No.

"THE COURT: Okay. You think that you could put aside any past experience that you've had with her and decide this case upon the law and the which is given to you?

"JUROR NO. 27: Yes.

"THE COURT: Would you have any embarrassment whatsoever, if you ultimately find the Defendant not guilty, should you come in contact with the girl and/or her family in the future?

"JUROR NO. 27: No."

The trial court then permitted appellant to question the witness and in particular, the witness answered the following:

"MR. MACKEY: Did you form any opinion about their truthfulness and veracity from your acquaintance with the little girls?

"JUROR NO. 27: No. I didn't have that kind of contact with them."

After this dialogue, the trial court denied appellant's challenge for cause.

Removal of a juror is within the sound discretion of the trial court. *State v. Grubb* (1988), 44 Ohio App.3d 94, 541 N.E.2d 476. Crim.R. 24 enumerates the specific challenges for cause with thirteen specific causes and one as "otherwise unsuitable." From our review of the transcript and Crim.R. 24, the association described by the juror did not fit any of these enumerated causes. We find no abuse of discretion by the trial court in the denial of appellant's challenge.

Assignment of Error VII is denied.

The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

*Judgment affirmed.*

SMART and WILLIAM B. HOFFMAN, JJ., concur.